## SKAUG *v.* KNAPPINS.

**1. APPEAL AND ERROR—DIRECTED VERDICT.**

On reviewing a judgment entered on a directed verdict denying right of recovery for injuries resulting in the death of plaintiff's decedent, the testimony and the inferences to be fairly drawn therefrom must be viewed in the light most favorable to plaintiff.

**2. HIGHWAYS AND STREETS—AUTOMOBILE MAY TRAVEL ANY PORTION OF ROADBED.**

The driver of a motor vehicle has a right to travel upon any portion of the roadbed when not near a vehicle approaching from the front or rear.

**3. NEGLIGENCE—MOTOR VEHICLES—FAILURE TO EQUIP WITH REQUIRED LIGHTS—STATUTES.**

The driver of an automobile who fails to equip it with headlights capable of clearly lighting the highway at least 200 feet ahead, as required by 1 Comp. Laws 1915, § 4812, as amended by Act No. 287, Pub. Acts 1925, is guilty of negligence.

**4. SAME — CONTRIBUTORY NEGLIGENCE OF DRIVER IMPUTABLE TO PASSENGER—DEATH.**

The negligence of the driver of an automobile, which contributed to the injury of a passenger, is imputable to the latter in an action for injuries resulting in his death.

**5. SAME—DEATH—CONTRIBUTORY NEGLIGENCE—MOTOR VEHICLES — DIRECTED VERDICT.**

In an action for the death of plaintiff's decedent, caused by the automobile in which decedent was riding running into the rear end of defendant's truck and trailer, the contributory negligence of the driver of the automobile, in failing to equip it with headlights capable of clearly lighting the highway 200 feet ahead, as required by 1 Comp. Laws 1915, § 4812, as amended by Act No. 287, Pub. Acts 1925, which would have prevented the accident, warranted a directed verdict in favor of defendants.

---

[1]Appeal and Error, 4 C. J. § 2709; [2]Motor Vehicles, 42 C. J. § 612; L. R. A. 1918B, 828; 14 A. L. R. 794; 2 R. C. L. 1192; 1 R. C. L. Supp. 729; 4 R. C. L. Supp. 151; 6 R. C. L. Supp. 132; [3]Id., 42 C. J. §§ 597, 911; [4]Id., 42 C. J. § 956; L. R. A. 1915B, 953; 2 R. C. L. 1207; 1 R. C. L. Supp. 743; 4 R. C. L. Supp. 159; 5 R. C. L. Supp. 148; 6 R. C. L. Supp. 139; [5]Id., 42 C. J. §§ 597, 1114; 41 L. R. A. (N. S.) 322; 2 R. C. L. 1194; 1 R. C. L. Supp. 729; 4 R. C. L. Supp. 151; 5 R. C. L. Supp. 137.

Error to Kent; Dunham (Major L.), J.    Submitted
October 4, 1927.    (Docket No. 15.)    Decided December 1, 1927.

Case by John Skaug, administrator of the estate of
Marvyle Skaug, deceased, against Arley Knappins and
others for the alleged negligent killing of plaintiff's de-
cedent.    Judgment for defendants on a directed verdict.
Plaintiff brings error.    Affirmed.

*J. T. & T. F. McAllister* and *Clare J. Hall,* for ap-
pellant.

*Bishop & Weaver,* for appellees.

SHARPE, C. J.    Between 1 and 2 o'clock in the morn-
ing of September 8, 1925, the defendant Knappins was
driving a truck with a two-wheel trailer attached at
the rear, belonging to the other defendants, from De-
troit to Grand Rapids.    When about 10 miles west of
Portland, an Oakland touring car, then being driven
by Arthur G. Henderson, crashed into the rear end of
the trailer.    Marvyle Skaug, who was sitting in the
front seat of the car with Henderson, received injuries
due to the collision which resulted in her death a few
hours thereafter.    Plaintiff, as administrator of her
estate, brings this action to recover the damages due
thereto.    The trial court directed a verdict for the
defendants because of the negligence of the driver of
the car.    Plaintiff reviews the judgment entered
thereon by writ of error.

The testimony of the witnesses and the inferences
which may fairly be drawn therefrom must be viewed
in the light most favorable to support plaintiff's right
of recovery.    Henderson, the driver of the car, testi-
fied:    "It was a dark night, no moon, but it was not
raining.    The weather was clear;" that on the car
"were two headlights burning bright" and a spot light

"placed on the right-hand side so that it might show the right-hand side and the ditch;" that he was proceeding on a down grade and "when I got part way down I saw a truck come in from the left-hand side and turn in to my track and I applied my brakes;" that he was traveling "right in the right-hand track, and that is within two or three feet of the edge of the road;" that the speed of the car was about 25 miles an hour; that it was equipped with four-wheel brakes, which would stop the car when so traveling within 50 feet; that "on the left-hand side there is a very deep ditch and the land on the left-hand side is much lower than the road, and on the right-hand side is a deep ditch and high embankment;" that he first saw the trailer when within 30 feet of it; that he then applied the brakes, but could not stop in time to avoid the collision; that he was familiar with the road, and knew that it was crossed by a highway about 75 feet from where the accident occurred. We quote from his testimony:

"*Q.* Now, how far ahead of your car did your lights illuminate the highway? .

"*A.* Over 200 feet.

"*Q.* And did they illuminate the entire highway, or only just some portion of it?

"*A.* Just in front of my car.

"*Q.* You did not have the required lights on your car, did you?

"*A.* Yes.

"*Q.* You did not have lights on your car that would illuminate a space in the roadway 200 feet ahead of you that would be 22 feet in width?

"*A.* No.

"*Q.* How wide was the space in width that your lights would illuminate the roadway at 200 feet?

"*A.* About six feet.

"*Q.* Now, at any point within 200 feet and the front portion of your car, would the lights illuminate any greater width in the highway than six feet?

"*A.* Yes, on the right-hand side.

"*Q*. That is on account of the spotlight?

"*A*. Yes.

"*Q*. Your headlights at no point within 200 feet or over 200 feet, or at any point in the roadway ahead, would illuminate a width of more than six feet?

"*A*. Possibly four or five feet in front of the car, might throw a slight ray on each side, reflection might.

"*Q*. You didn't misunderstand my question in any way, did you?

"*A*. No."

It is undisputed that the roadbed at the point of collision was 24 feet wide.   Of this, 16 feet had been graveled, leaving what is called a "shoulder" on each side four feet in width.   There is proof that by use the gravel had spread over the shoulder to some extent.

Marvel J. Church, a farmer living near the scene of the accident, reached there soon thereafter.   He described the condition of the car and truck and said that it was the "worst wreck" he had ever seen.   He further testified:

"After the accident I looked on the road to see where the tracks of his truck were just prior to the accident. We looked at the tracks of the truck.   He had been on the south side of the road, that is, not clear over, but past the center; past the center of the road on the south side.   The tracks of the truck were plainly discernible."

On being asked how far the left wheel marks of the truck and trailer were over the center of the road, he said, "Probably three feet, maybe more.   It is a long while ago," and stated that he had traced them back three or four rods to the top of the grade.

The statute then in force, providing for lights upon motor vehicles (1 Comp. Laws 1915, § 4812, as amended by Act No. 287, Pub. Acts 1925), reads as follows:

"Every motor vehicle operated on the public highways shall be equipped with not more than two white headlights of equal candle power, capable of clearly

lighting the highway at least two hundred feet ahead.
* * * Any violation of the provisions of this sub-
section shall constitute reckless driving." * * *

The driver testified, as above stated, that the car
was equipped with two headlights which would il-
luminate the road more than 200 feet in front of the
car, but such illumination, except for "four or five
feet in front of the car," was confined to a width of
about six feet. It may well be doubted whether the
illumination from these lights could be thus confined,
but, if it was, then clearly the equipment in this re-
spect was not "capable of clearly lighting the high-
way," as required by the statute. The purpose of
these lights is to afford the driver a view of the entire
traveled portion of the road for a distance of 200 feet
in the front of his car, and they should be so adjusted
and operated as to render the use of the highway by
such vehicle safe for the public. The driver of a
motor vehicle has a right to travel upon any portion
of the roadbed when not near a vehicle approaching
from the front or rear. On such approach, it is his
duty to bring his vehicle to the right side of the road-
bed in order that the one approaching may pass in
safety. Under the undisputed testimony, the truck
and trailer were at no time entirely on the south
side of the center of the roadbed. Had the Oakland
car been equipped with the lights provided for in the
statute, and had they been in good working order, its
driver, if he had been looking, could not but have seen
the rear end of the trailer when it was a distance of
200 feet from him, and, as he could have stopped
within 50 feet, the accident would have been avoided.
Conceding that the driver of the truck was negligent,
the negligence of the driver of the car contributed to
the injury sustained by the deceased. The conclusion
reached is in harmony with our former decisions.
*Spencer* v. *Taylor*, 219 Mich. 110; *Lett* v. *Summerfield*

*& Hecht,* 239 Mich. 699, and cases cited.     A verdict for defendants was properly directed.

The judgment entered thereon is affirmed.

BIRD, FLANNIGAN, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.

The late Justice SNOW took no part in this decision.